693 P.2d 1065

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Cirilo MATA, Defendant-Appellant.**

**No. 14980.**

Court of Appeals of Idaho.

Dec. 12, 1984.

Stewart A. Morris, Boise, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Cirilo Mata was convicted after a jury trial of conspiracy to violate the Uniform Controlled Substances Act, I.C. § 37-2732(f), and sentenced to the Board of Correction for an indeterminate term not to exceed fifteen years. He appeals, raising three issues. First, he contends the district court erred in admitting evidence of statements made by alleged co-conspirators before the state produced independent proof of the existence of the conspiracy. Second, he argues the district court erred in denying his motion for a judgment of acquittal. Third, he maintains the court abused its discretion in imposing an indeterminate fifteen-year sentence. We affirm.

The facts are as follows. In 1982, a heroin addict (hereinafter referred to as "E.C.") volunteered for undercover work with the police. On March 8, acting under the direction of the police and using money supplied by them, E.C. contacted Luis Martinez and asked him to buy some heroin for her. Martinez agreed. They then drove to a duplex at 7002 Poplar Street, Boise, and Martinez went inside alone. A short time later, he returned with the heroin, packaged in four white papers with blue seals. He took a small amount for his own personal use as "payment" for his part in the transaction. Similar transactions occurred on March 9 with Victor Guzman as E.C.'s contact, on March 30 with Benny Guzman as her contact, and on May 20 with Luis Martinez again as her contact. Each time E.C. and her contact went to 7002 Poplar Street and each time the contact returned from the duplex with heroin packaged in

small white papers with blue seals. During each of these transactions, the conversations between E.C. and her contact were monitored and recorded by police by means of a radio transmitter attached to her body. In this manner the police learned that the person supplying the heroin was the appellant, Mata.

Mata was arrested on July 13 and the duplex at 7002 Poplar Street was searched. Evidence that Mata lived at the address was found, as were drug paraphernalia and heroin residue. Mata went to trial. There, over objections by defense counsel, E.C. was permitted to testify to statements made by her contacts. The statements were admitted as statements by co-conspirators made in furtherance of the conspiracy. Mata's motion for a judgment of acquittal at the end of the state's case was denied because the court held there was sufficient independent evidence of the conspiracy to justify sending the case to the jury. Mata was convicted.

### I

■ The first issue we will address is whether the district court erred by admitting evidence of statements made by Mata's alleged co-conspirators before there was sufficient independent proof of the conspiracy to invoke the co-conspirator exception to the hearsay rule. This exception provides that

> [w]here a conspiracy has been established to commit a crime, each declaration or act of any of the conspirators, during the pendency of the criminal enterprise, in pursuance of the original plan and with reference to the common object, is competent evidence against each of them.

*State v. So*, 71 Idaho 324, 330, 231 P.2d 734, 737 (1951). Under this exception, "there must be some evidence of the conspiracy, *or a promise of its production,* before the court can properly admit evidence of statements made in pursuance of the conspiracy." *State v. Brooks*, 103 Idaho 892, 901, 655 P.2d 99, 108 (Ct.App.1982) (emphasis added). The district court thus

has the discretion to admit evidence of such statements *prior to proof of the conspiracy. Id.; State v. So*, 71 Idaho at 329, 231 P.2d at 737. If at the close of the state's case there is insufficient independent proof of a conspiracy, of course, the co-conspirator's statements should be stricken. Any charge of conspiracy pending would then necessarily fall, also for lack of evidence.

■ Even if we assume, therefore, that evidence of the co-conspirators' statements was admitted before there was independent proof of the conspiracy, we find no error. Although not explicit on the record, it is clear that the state "promised" to produce independent proof of the conspiracy. In fact, the district court expressly admitted the testimony upon the condition that the state produce sufficient independent proof of the conspiracy. The court also recognized its power to strike those statements if proof was not forthcoming. We hold the court did not abuse its discretion by admitting those statements prior to production of independent proof of the conspiracy.

### II

The second issue is whether the district court erred by denying Mata's motion for a judgment of acquittal at the close of the state's case. His argument on this issue parallels his argument on the first issue: the state failed to establish the conspiracy by sufficient independent proof. From our reading of Mata's brief, we will assume this issue has two components—(A) that because of the lack of sufficient independent proof of the conspiracy, the evidence of the statements of Mata's alleged co-conspirators should have been stricken; and (B) that without the evidence of those statements there was insufficient evidence to sustain a conviction. We will address each of these components in turn.

### A

■ In *State v. Brooks, supra,* we established the quantum of proof sufficient to admit evidence of statements of co-conspirators. We noted that

[w]ith little exception, the courts of other jurisdictions which have considered the question of the *quantum* of proof necessary to be established by independent evidence, to render admissible the extrajudicial statements of an alleged co-conspirator in a criminal case, have held or recognized that the independent evidence must establish a prima facie case of conspiracy.

103 Idaho at 901, 655 P.2d at 108 (emphasis original). A "prima facie case" was defined as "sufficient evidence to permit the trial court reasonably to infer that there existed a conspiracy." *Id.* (quoting *State v. Thompson*, 273 Minn. 1, 139 N.W.2d 490, 503 (1966), *cert. denied*, 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966)).

The following is the evidence adduced at trial which we believe constitutes sufficient independent proof from which the district court could have reasonably inferred the existence of a conspiracy. E.C. stated that when she contacted Martinez on March 8 for the purpose of obtaining heroin, he indicated he first had to call his source. She testified that he could not remember Mata's telephone number and that she told him what it was. Telephone bills seized from the duplex during the search showed that the telephone number given Martinez by E.C. was in fact Mata's. This is one indication that the call was indeed made to Mata, instead of someone else. *See United States v. Stroupe*, 538 F.2d 1063 (4th Cir. 1976). Other evidence seized by police during the search also served to show that Mata did live in the duplex at 7002 Poplar Street. Furthermore, testimony of police officers revealed that Mata was present at the duplex at least during the March 9 transaction involving Victor Guzman. A photograph, taken by police and admitted into evidence, showed Mata and Guzman standing outside the duplex.

As a result of each visit to 7002 Poplar Street, E.C. obtained heroin. The typical scenario, acted out by the parties, was that E.C. and her truck would be searched by police both before and after the transaction. At no time were either drugs or money found on her or in her truck. She and her contact would then drive to Mata's duplex. The contact alone would enter the residence and return a short time later with heroin, contained in white papers with blue seals. The contact would take a portion of the heroin as "payment" for his part in the transaction. The search of Mata's duplex revealed white papers with blue seals, identical to those which contained heroin and which were delivered to E.C. Some of the papers seized from Mata's duplex bore a residue of heroin and other drug paraphernalia were found on the premises. Further evidence could be detailed, but would serve little purpose. Clearly the district court could reasonably infer that a conspiracy existed. Therefore, evidence of the statements of the co-conspirators need not be stricken.

B

The second component of this issue is whether there was sufficient evidence to sustain the conviction. A motion for judgment of acquittal under I.C.R. 29 "will not be granted when the evidence is sufficient to sustain a conviction. ... In our view, the test of sufficiency is whether there is substantial and competent evidence to support a conviction—the same standard applied in appellate review of convictions." *State v. Elisondo*, 103 Idaho 69, 72, 644 P.2d 992, 995 (Ct.App.1982) (citation omitted). "When a motion for judgment of acquittal has been denied, and the defendant stands convicted, all reasonable inferences on appeal are taken in favor of the prosecution." *State v. O'Campo*, 103 Idaho 62, 67, 644 P.2d 985, 990 (Ct.App.1982).

In addition to the evidence outlined above, the jury also had the benefit of statements made by Luis Martinez, Victor Guzman and Benny Guzman, not only as relayed by E.C. in her testimony, but as recorded by police on cassette tapes admitted into evidence. These tapes reveal all three contacts referring to their source as "Chino." E.C. testified that Mata was known as "Chino," a fact borne out by the word "Chino" tattooed on Mata's arm. In

light of all the evidence contained in the record and drawing all reasonable inferences in favor of the state, we hold there was substantial, competent evidence to support the conviction for conspiracy.

### III

The final issue raised by Mata is whether the district court abused its discretion in sentencing him to an indeterminate fifteen-year term. If a sentence is within the statutory maximum, the "appellant has the burden of showing a clear abuse of discretion on the part of the court imposing the sentence." *State v. Cotton*, 100 Idaho 573, 577, 602 P.2d 71, 75 (1979). Idaho Code § 37-2732(f) provides: "If two (2) or more persons conspire to commit any offense defined in this act, said persons shall be punishable by a fine or imprisonment, or both, which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the conspiracy." Heroin is a schedule I controlled substance, I.C. 37-2705(c)(11), and is a "narcotic drug," I.C. § 37-2701(*o*). The maximum penalty for the manufacture, delivery, or possession with intent to manufacture or deliver a schedule I narcotic drug is life imprisonment, a $25,000 fine, or both. I.C. § 37-2732(a)(1)(A). Mata's sentence was, therefore, well within the statutory maximum.

We note that a plethora of cases place the burden upon the defendant to *affirmatively* show an abuse of discretion in sentencing. In this case, Mata either chose or neglected to include, in the record on appeal, the presentence report or a transcript of the sentencing hearing. Whatever mitigating factors they might have contained are not before us. It is the appellant's duty to furnish an adequate record on appeal which documents and supports his contentions. *State v. Wallace*, 98 Idaho 318, 563 P.2d 42 (1977). We hold that Mata has failed to carry his burden to affirmatively show the district court abused its discretion in sentencing him to a fifteen-year indeterminate term.

The conviction and sentence are therefore affirmed.

WALTERS, C.J., and BURNETT, J., concur.